UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 23-CV-22670-MD

**WANDA JEAN BAPTISTE**,

    Plaintiff(s),

vs.

**CITY OF MIAMI**,

    Defendant(s).

_____/

**CITY OF MIAMI MOTION TO STRIKE PORTIONS OF AFFIDAVITS (ECF 103-1 & 103-2) FILED IN OPPOSITION TO CITY'S MOTION FOR SUMMARY JUDGMENT**

The CITY OF MIAMI ("City"), by and through undersigned counsel, hereby moves to strike portions of the Plaintiff's affidavit [ECF 103-1] and witness Brandon Lanier's ("Lanier") affidavit [ECF 103-2] based on Federal Rules of Civil Procedure 26(a)(1)(iii), 56(h) and 37(b)(2)(A). In support of its motion, the City states as follows:

**FACTS/PROCEDURAL HISTORY**

1. The City took the Plaintiff's deposition over the course of 6.5 hours on February 27, 2024. [ECF 85-45].

2. The City took witness Lanier's deposition on March 29, 2024. [ECF 103-3].

3. The City filed a motion for summary judgment on April 1, 2024. [ECF 87].

4. The Plaintiff responded to the City's motion by filing ECF 103-1, an 18-page affidavit by the Plaintiff, and ECF 103-2, a 12-page affidavit by Lanier.

5. Numerous paragraphs within both affidavits, however, are improper, as they contain impermissible speculation, legal conclusions, hearsay, vague statements, and are contradicted by the deponent's prior testimony as well as other portions of the record. Even further, three

(3) of the paragraphs reference documents that were never turned over in discovery, despite this Court's discovery order.

6. This motion followed.

## ARGUMENT

### I. Numerous Paragraphs in ECF 103-1 & 103-2 Should be Stricken because they are Conclusory, Speculative or Vague

"A court may strike an affidavit or portions of an affidavit that are conclusory, speculative, or vague." *R&R Int'l, Inc. v. Manzen, LLC*, 09-60545-CIV, 2010 WL 11504727, at *2 (S.D. Fla. Sept. 12, 2010); *Hill v. Oil Dri Corp. of Georgia*, 198 Fed. Appx. 852, 858 (11th Cir. 2006) (plaintiff cannot defeat summary judgment by relying on conclusory allegations; opposing affidavits must list specific facts showing an issue for trial); *Hill v. Oil Dri Corp. of Georgia,* 198 Fed. Appx. 852, 858 (11th Cir. 2006) (striking vague and conclusory statements).

The following paragraphs in **ECF 103-1** must be stricken because they contain improper **speculative statements**:

1. **Paragraph 51**, speculating that Morales "acknowledged that his conduct was improper by reinstated Ortiz…" [ECF 103-1 ¶ 51].

2. **Paragraph 64**, speculating that Panoff has "full knowledge that the investigation entailed numerous FSS 112 violations." [ECF 103-1 ¶ 64].

3. **Paragraph 67,** speculating the reason why Morales opened an investigation into Ortiz. [ECF 103-1 ¶ 67].

4. **Paragraph 71**, speculating that the Disciplinary Review Board "were absolutely aware of my whistleblower activities…" [ECF 103-1 ¶ 71].

5. **Paragraph 72**: speculating that Sergeant Robinson had knowledge of the June 9, 2022, whistleblower letter. It should also be noted that the Plaintiff attempts to vaguely allege

that *she* submitted a whistleblower letter on May 26, 2022, in this paragraph. This is false and will be addressed further below. [ECF 103-1 ¶ 72].

The following paragraphs in **ECF 103-2** must be stricken because they contain improper **speculative statements**:

1. **Paragraph 41,** speculating that the "officers who did the investigation on Wanda were well aware of all of Wanda's reports of malfeasance and written whistleblower letters and complaints." [ECF 103-2 ¶ 41].[1]

2. **Paragraph 52,** speculating that "Sergeant Robinson was aware and read my whistleblower letter…" [ECF 103-2 ¶ 42].

The following paragraphs in **ECF 103-1** must be stricken because they contain **vague** statements:

1. **Paragraph 108** is vague in that it refers to "disparate and racial/national origin discrimination to the City Mayor, City Manager, and other agencies to include FDLE" without detailing specifics of that complaint. [ECF 103-1 ¶ 108].[2]

2. **Paragraph 111** is vague in that the Plaintiff references "due process" without explanation and references "other officers" who were "cleared" or "reinstated" without listed those officers or mentioning what they were "cleared" or "reinstated" for. [ECF 103-1 ¶ 111].

II. **Numerous Paragraphs in ECF 103-1 & 103-2 Should be Stricken because they Contain Hearsay Statements that Cannot be Cured at Trial**

---

[1] This also infers there were multiple letters and complaints, none of which were turned over in discovery or listed in the Plaintiff's Rule 26 disclosures.
[2] These alleged complainTs were also not turned over in discovery nor are they listed on the Plaintiff's Rule 26 disclosures.

Hearsay statements cannot be relied upon to defeat summary judgment. *Gonzalez v. State of Florida Dep't of Mgmt. Services*, 124 F. Supp. 3d 1317, 1328 (S.D. Fla. 2015). The Court, however, may "consider a hearsay statement in evaluating a motion for summary judgment if the statement can be reduced to admissible format trial." *Id.*

The following paragraphs in **ECF 103-1** must be stricken because they contain **hearsay** that cannot be cured at trial**:**

1. **Paragraph 67**, citing statements by a City Commissioner. The Commissioner's statement is not attached nor is he listed on the Plaintiff's witness list. [ECF 103-1 ¶ 67].

2. **Paragraph 73,** citing statements made by Lieutenant Weslyne Lewis. Ms. Lewis' statement is not attached nor is she listed on the Plaintiff's witness list. [ECF 103-1 ¶ 73].

The following paragraph in **ECF 103-2** must be stricken because it contains **hearsay** that cannot be cured at trial**:**

1. **Paragraph 42**, citing statements made by Lieutenant Weslyne Lewis. Ms. Lewis' statement is not attached nor is she listed on the Plaintiff's witness list. [ECF 103-2 ¶ 42].

   III.  **Numerous Paragraphs in ECF 103-1 & 103-2 Should be Stricken because they contain Impermissible Legal Conclusions**

Summary judgment cannot be defeated with improper legal conclusions. This is because legal conclusions are inadmissible at trial. *Ojeda v. Louisville Ladder Inc.,* 410 Fed. Appx. 213, 215 (11th Cir. 2010).

The following paragraphs in **ECF 103-1** must be stricken because they contain a **legal conclusion:**

1. **Paragraph 3**, stating the Plaintiff was discriminated based on her race. [ECF 103-1 ¶ 3].

2. **Paragraph 22,** stating the City issued letters of intent to discipline "in retaliation for us coming forward with information about corruption and wrong doing…" [ECF 103-1 ¶ 22].

3. **Paragraph 25,** stating that investigations and reports found "misfeasance and malfeasance." [ECF 103-1 ¶ 25].

4. **Paragraph 26**, stating Plaintiff reported "malfeasance." [ECF 103-1 ¶ 26].

5. **Paragraph 27**, stating the City retaliated and discriminated against the Plaintiff. [ECF 103-1 ¶ 27].

6. **Paragraph 29,** stating the City retaliated against the Plaintiff. [ECF 103-1 ¶ 29].

7. **Paragraph 31**, stating that the Plaintiff was ordered to close her cases "as a result of" her requested a 112 compliance hearing. [ECF 103-1 ¶ 31].

8. **Paragraph 33**, stating "[t]he City has retaliated against me for simply obeying the law and doing my job. This retaliation for me reporting corruption and cooperating in investigations has included reprimands, emotion, and punitive assignments, including loss of pay and benefits." [ECF 103-1 ¶ 33].

9. **Paragraph 35,** stating "[m]y demotion from my position of detective resulted from refusal to turn a blind eye to the untrue statements made against me by Papier and Chief Morales. My demotion was an act of retaliation by the City of Miami and Chief Manuel Morales." [ECF 103-1 ¶ 35].

10. **Paragraph 36**, stating "Chief Morales threatened further retaliation…" [ECF 103-1 ¶ 36]. ³

11. **Paragraph 39,** stating the Plaintiff "reported malfeasance, misconduct and illegality in written and signed complaints." [ECF 103-1 ¶ 39].

12. **Paragraph 40,** stating the Plaintiff refused to cooperate in improper adverse action." [ECF 103-1 ¶ 40].

13. **Paragraph 41**, stating the Plaintiff "participated in investigations of malfeasance, misfeasance, and illegality." [ECF 103-1 ¶ 41].

14. **Paragraph 42**, stating "Chief Morales' conduct constituted malfeasance and misfeasance and undermined the integrity and public confidence in the City of Miami Police Department." [ECF 103-1 ¶ 42].

15. **Paragraph 45**, stating the Plaintiff was "subjected to adverse employment action in response to and in direct correlation of his protected activities." [ECF 103-1 ¶ 45].

16. **Paragraph 47,** stating the Plaintiff has "exhausted my administrative remedies." [ECF 103-1 ¶ 47].

17. **Paragraph 48,** stating the Plaintiff "participated in the following additional investigations which also constituted protected activity under Chapter 112.387…" [ECF 103-1 ¶ 48].

18. **Paragraph 54,** stating "Morales retaliated against by demoting me and restricting my due process right for my participation in this investigation and for reporting malfeasance and misconduct. This included signed and written complaints, as well as

---

³ This Paragraph is also contradicted by record evidence.

participation in investigations and refusing to condone improper adverse action." [ECF 103-1 ¶ 54].

19. **Paragraph 56,** stating the Plaintiff's transfer constituted an "adverse action." [ECF 103-1 ¶ 56].

20. **Paragraph 65,** characterizing the record of formal counseling as "retaliatory." [ECF 103-1 ¶ 65].

21. **Paragraph 70,** stating the Plaintiff was "transferred for exposing and refusing to go along with the complaint." [ECF 103-1 ¶ 70].

22. **Paragraph 93**, stating "[t]he only difference is that Perez and Kawiorski are white males, and I am a black female." [ECF 103-1 ¶ 93].

23. **Paragraph 102,** stating that white counterparts received preferential treatment "evidencing an ongoing pattern of discrimination against black employees by the City." [ECF 103-1 ¶ 102].

24. **Paragraph 109**, concluding "[a]fter my complaint, I was retaliated against by Chief Morales…" [ECF 103-1 ¶ 109].

The following paragraphs in **ECF 103-2** must be stricken because they contain a **legal conclusion:**

1. **Paragraph 5**, stating Lanier "wrote written reports finding malfeasance and misfeasance…" [ECF 103-2 ¶ 5].

2. **Paragraph 6, stating Morales** retaliated against detective Wanda Baptiste because Wanda made written reports documenting misconduct." [ECF 103-2 ¶ 6].

3. **Paragraph 11,** stating there were findings regarding malfeasance and misfeasance by current Chief of Police Morales resulting in a formal reprimand which Morales agreed to." [ECF 103-2 ¶ 11].

4. **Paragraph 12**, stating "a written report was concluded concerning malfeasance, misfeasance…" [ECF 103-2 ¶ 12].

5. **Paragraph 22**, stating the City issued a letter of intent to discipline "…in retaliation for me coming forward with information about corruption and wrong doing…" [ECF 103-2 ¶ 22].

6. **Paragraph 23,** stating "[t]he City retaliated and discriminated against Wanda as they restricted her right to counsel and restricted her right to specific witnesses." [ECF 103-2 ¶ 23].

7. **Paragraph 25**, stating the City retaliated against the Plaintiff. [ECF 103-2 ¶ 25].

8. **Paragraph 27,** stating "[d]ue to Wanda's involvement in overseeing the investigation so Ronald and Nerly Papier, Lanier overseeing the investigation of Sergeant-At-Arms Luis Camacho, and us coming forward with information about corruption and wrongdoing involving Chief Manuel Morales and others from within the department, Chief Morales retaliated against her." [ECF 103-2 ¶ 27].

9. **Paragraph 29**, stating "[t]he City retaliated against Wander for simply obeying the law and doing her job. This retaliation for Wanda reporting corruption and cooperating in investigations has include reprimands, demotions, and loss of benefits." [ECF 103-2 ¶ 29].

10. **Paragraph 30**, stating "Chief Morales retaliated against Wanda by creating a hostile work environment for us…" [ECF 103-2 ¶ 30].

11. **Paragraph 32**, stating "Chief Morales threatened further retaliation against Wanda…" [ECF 103-2 ¶ 32].[4]

12. **Paragraph 33**, stating "Chief Morales retaliated and humiliated Wanda at her whistleblower hearing against the City of Miami…" [ECF 103-2 ¶ 33].

13. **Paragraph 36**, stating "Wanda was subjected to adverse employment action in response to and in direct correlation of his protected activities." [ECF 103-2 ¶ 36].

14. **Paragraph 61,** stating "[t]he only difference is that Perez and Kawiorski are white males and Wanda is a black female." [ECF 103-2 ¶ 61].

IV. **Numerous Paragraphs in the Plaintiff's Affidavit [ECF 103-1] Should be Stricken because they Directly Contradict the Plaintiff's Deposition Testimony as Well as Record Evidence**

A Plaintiff cannot file an affidavit changing his prior testimony solely for the purpose of defeating summary judgment. *Akins vs. Fulton County, Ga.,* 278 Fed. Appx. 964, 968 (11th Cir. 2008) (a party cannot create a genuine issue of material fact by creating an affidavit that merely contradicts, without explanation, previously given clear testimony). Accordingly, "a district court may find an affidavit which contradicts testimony on deposition a sham when the party merely contradicts its prior testimony without giving any valid explanation." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.,* 736 F.2d 656, 657 (11th Cir. 1984).

The following Paragraphs in **ECF 103-1** are **contradicted** by the Plaintiff's own prior testimony:

1. **Paragraph 66** of ECF 103-1 states:

   Chief Morales DID NOT request IA to merely do an audit of Ortiz closed out IA investigations. That is a lie. Chief Morales, in fact, ordered IA Commander Brandon Lanier to open multiple

---

[4] This Paragraph is also contradicted by record evidence.

> investigations into Ortiz, two of which were related to complaints received by IA in January of 2020…

[103-1, ¶ 66].

Yet, in her deposition, the Plaintiff states:

> Q. Did you author any reports for Javier Ortiz?
> A. From my recollection, I did. But, Ms. Panoff, honestly, when Manny Morales took over, the retaliation after my whistleblower came through, Javier Ortiz was on my desk. During that time, I got orders, in 48 hours, to complete -- actually, no, let's go back. I got orders to treat this as a misconduct, and in that meeting, I said, "Do you understand, whenever you open a closed investigation, there has to be new information that is brought forward? I have no problem as an assignment, but what is the new information that we're receiving to open up a closed investigation," because at that time, the case was closed.
> Q. Understood.
> A. And at that time, that's when I started getting even more resistance in Internal Affairs.
> Q. So who gave you the orders to reopen the case?
> A. That was from Chief Morales, Antonio Diaz, Bianca Joseph, trickle down to Anthony Perez, who is my sergeant, who handed it over, and I was told, "Don't ask any questions. Go do it."
> …
> Q: And after that meeting, Lieutenant Perez informed you to reopen the Javier Ortiz investigation?
> A. Because that is my chain of command…
> …
> Q: Okay. And so I understand now what happened. You're saying that they told you to reopen a case against Javier Ortiz?
> A: Which is fine, but you could only reopen a case -- it's like telling me, dig a grave, if I don't have information to tell us on digging a grave….
> …
> Q. Okay. I know that you said that Lieutenant Perez told you, "Reopen this case, don't ask questions." Did he tell you anything about Javier Ortiz?
> A. No, and that's when I started asking questions…

[ECF 85-45 at 60: 1-23, 61: 13-16, 62: 14-19, 63: 8-11].

2. **Paragraph 69** of ECF 103-1 states:

> I vigorously disagreed with the direction to open the Ortiz cases. I objected to being ordered to remove Chief Morales' name as the

> complainant because this was false, dishonest, unethical and a violation of Florida State Statute 112.532. Therefore, I sent email communication requesting Chief Morales to provide a complainant statement.

[ECF 103-1, ¶ 69].

Yet, in her deposition, the Plaintiff states she "didn't disagree with my assignment."

[ECF 85-45 at 62: 20-21].

3. In **Paragraphs 74 and 75**, the Plaintiff claims Counsel Panoff informed her to treat Papier as a witness. [ECF 103-1, ¶¶ 74, 75]. Yet, in her deposition, the Plaintiff testified that it was ASA Hardiman that informed her to treat Papier as a witness and further clarified Panoff's involvement as follows:

> Q: But my question to you is, is it Johnette Hardiman who you're saying advised you to treat Ronald Papier as a witness?
> ….
> A: Yes, Johnette Hardiman.
> …
> Q. Okay. So the testimony that you're saying now, that the City Attorney's Office is involved from the inception through the end of the investigation, I'm going to ask you specifically what my involvement was?
> A. Your involvement, from the day of conception of this case, was exactly what Acevedo received, what I said earlier. Acevedo received the complaint. He stated he reached out to you, he reached out to JC Perez, and that's why JC Perez is pivotal, to take a statement from here, because he was there to answer why they're saying you are a part. When JC Perez didn't understand a question, he put you on speaker, to answer questions on this investigation, and it came down from statements, to reviewing the reprimands, to whatever your role with Acevedo and City Legal was. And if you were not available, they called George Wysong. That's why I worked day in and day out with this group.
> …
> Q. Okay. Understood. So in terms of what you -- what you have direct knowledge of, of my involvement in the Papier investigation.
> A. Your direct involvement was legal guidance. Furthermore, when the reprimand was done, Ms. Panoff, you met on a total of -- I'm not going to quote how many occasions --

> Q. It was a couple.
> A. -- you changed some language in the reprimand, that you didn't like, and you -- at one point, you changed it. You even called Art Acevedo, in front of us, and said, "I don't agree with this. This is what needs to be on it. I'm not going" -- which you've done, in the past, on other investigations. In particularly with Papier, in one instance, you came into the office. We had discussions. The second one, you remotely, which you guys do have the power of City Legal -- I learned that day -- to go into our computer and work on whatever is on the monitor with us.
> Q. Right.
> …
> Q. Okay. So it's your testimony that I reviewed the reprimand, I made changes to the reprimand, we met multiple days, and that there was a conversation or meeting at Tony Diaz's house, at his dinner table?
> A. There's multiple conversations, yes, regarding the Papier.
> Q. Okay. Regarding the drafting and the revising of the reprimand?
> A. And the finalization before -- for the record, it's not only Papier's case. There has been other cases, that before we -- it's the firing of an officer, which means there's intricate details that we have to make sure it's met, before we present it to the officer, and that's why we have the reprimand. We send it to you. You send it back. You send it to us.

[ECF 85-45 at 101: 23-25, 102:1, 108: 9-25, 109: 1-22, 110: 11-25].

4. In **Paragraphs 103 and 106,** the Plaintiff alleges she was not permitted to provide a principal statement during the Internal Affairs investigation. [103-1, ¶ ¶ 103, 106]. Yet, the Plaintiff admitted she provided a principal statement in deposition, which is also included in the record at ECF 85-27. [ECF 84-45, at 213: 22-25, 214: 1-4, ECF 85-27].

The following Paragraphs in **ECF 103-1** are also contradicted **by record testimony**:

5. In **Paragraph 72,** the Plaintiff states Morales <u>admitted</u> that he discussed her whistleblower letter at a staff meeting with his entire staff. [ECF 103-1, ¶ 72]. Chief Morales did not testify to this. [*see* ECF 85-4 at 255: 1-6, 9-23 for what Morales

    testified to regarding his staff meeting; Morales was never asked about his staff meeting in deposition].

6. In **Paragraph 77**, the Plaintiff alleges Counsel Panoff gave a "sworn statement" supporting her actions in the Papier investigation. The Plaintiff, however, filed the (unsworn) statement with the Court via link in ECF 45. A review of the link renders Paragraph 77 inaccurate.

7. In **Paragraphs 36 and 64**, the Plaintiff states Morales threatened retaliation and that Morales stated he "planned to retaliate" against the Plaintiff at the Plaintiff's whistleblower hearing. An actual review of those statements, which are transcribed in Morales' deposition testimony, reveals that the Plaintiff's statements are inaccurate. [ECF84-44 at 177: 18-25, 187:23-25, 188: 1-18, 189: 5-16.]. **Paragraph 32 of ECF 103-2** should be stricken for the same reason.

    The City wishes to further point out that, although not contradicted by her deposition testimony, **Paragraph 88** is intentionally misleading. With regards to Paragraph 88, the Plaintiff alleges that her witness<u>es</u> were not permitted to testify at her DDRB hearing [103-1, ¶ 88], when the Plaintiff testified that only her attorney was excluded. [ECF 85-45 at 234: 12-25, 235: lines 11-12].

    Further, in **Paragraph 5,** the Plaintiff states Morales admitted that he engaged in misconduct by agreeing to the reprimand she authored. However, in her authored reprimand, the Plaintiff sustained Morales for *improper procedure-* and not misconduct. [ECF 103-1, Pg. 27- first paragraph].

    **V.    Numerous Paragraphs Must be Stricken because the Plaintiff (1) Failed to Comply with Fed. R. Civ. P. 26, and (2) Failed to Comply with this Court's Discovery Order**

Lastly, **Paragraphs 44 and 108** of the Plaintiff's affidavit [**ECF 103-1** ¶¶ 44, 108] and **Paragraph 35** of Lanier's affidavit [**ECF 103-2**, ¶ 35] should be stricken because all three paragraphs mention documents that are not listed in the Plaintiff's Rule 26 disclosures and were never turned over in discovery, despite this Court's discovery order. [ECF 40 (ordering plaintiff to turn over discovery in response to City's request for production)].

In its request for production, the City requested:

> 1. Please provide all written documents that you claim are protected disclosures pursuant to Section 112.3187 of the Florida Statute in support of Count I of your complaint. Please provide the documents in their original formats (i.e. in the original email if it was sent by email).
> 2. Please provide all written documents that you claim are protected activity pursuant to 42 U.S.C. 2000e, et seq. (Title VII) in support of Count III of your complaint. Please provide the documents in their original formats (i.e. in the original email if it was sent by email).
> …
> 13. Please provide any documents that have not been previously provided that you believe support your allegations that you are a Whistleblower in support of Count I of your complaint.
> 14. Please provide any documents that you have not previously provided that you believe support Count II of your complaint.
> 15. Please provide any documents that you have not previously provided that you believe support Count III of your complaint.

The City ordered the Plaintiff to comply with the above requests on January 12, 2024. [ECF 40]. Yet, undisclosed and unproduced documents are mentioned in Paragraphs 44 and 108 of the Plaintiff's affidavit and Paragraph 35 of Lanier's affidavit:

1. **Paragraph 44 of ECF 103-1:** "These improper attempts to influence Internal Affairs investigations were reported in written complaints and *sworn testimony*." The Plaintiff

never produced any sworn testimony regarding such "attempts." Similarly, **Paragraph 35 of ECF 103-2** references the same sworn testimony that was never produced.

2. **Paragraph 108 of ECF 103-1:** references a "complaint of disparate and racial/national origin discrimination to City Mayor, City Manager and other agencies to include FDLE." This "complaint" was never produced in discovery.

Federal Rule of Civil Procedure 37 (b) lists a variety of sanctions that Court may impose, including the striking of pleadings and rendering a default judgment in favor of the City. Fed. R. Civ. P. 37(b)(2)(A)(iii) & (vi). The City is asking for neither. Rather, the City simply requests the Court strike the above paragraphs for noncompliance with the Court's discovery order.

The Plaintiff's failure to comply with the Court's order is coupled with the fact that the Plaintiff never placed the City on notice about the existence of the "sworn testimony" or the additional complaint in her Rule 26 disclosures. Rule 37(c) permits the Court to award sanctions for failing to make a disclosure under Rule 26. One of those sanctions is to prevent the offending party "from using that information or witness to provide evidence for a motion, hearing or trial…" *Baldeo v. Dolgencorp, LLC,* 8:12-CV-02762-EAK, 2014 WL 4749049, at *2–3 (M.D. Fla. Sept. 23, 2014). This can be done when the failure to disclose results in prejudice to the other party. *Id.*

In this case, the City is obviously prejudiced by such a late disclosure of "protected activity" (should it exist). The City cannot conduct discovery on the "protected activity" and cannot question either the Plaintiff or Lanier about it. The City cannot discover when the documents were sent or sworn to, what was stated in such documents, whether they fall under the definition of protected activity and whether such activity even exists. The City is at an extreme

disadvantage due to the late "disclosure" of protected activity. As a result, the above referenced paragraphs must be stricken.

WHEREFORE, the City requests the above reference Paragraphs in ECF 103-1 and ECF 103-2 are stricken from the record.

>GEORGE WYSONG, III, City Attorney
>STEPHANIE K. PANOFF,
>Division Chief for Labor & Employment
>BRYAN E. CAPDEVILA,
>Assistant City Attorney
>Attorneys for **City of Miami**
>444 S.W. 2nd Avenue, Suite 945
>Miami, FL  33130-1910
>Tel.: (305) 416-1800
>Fax: (305) 400-5071
>Email:  skpanoff@miamigov.com
>Secondary Email:  JMDeloro@miamigov.com
>
>By:  */s/ Stephanie K. Panoff*
>     Stephanie K. Panoff
>     Florida Bar No. 69214

## CERTIFICATE OF CONFERRAL PURSUANT TO LOCAL RULE 7.1

The City conferred with the Plaintiff regarding this motion via e-mail on May 1, May 2, May 4, May 5, and May 6, 2024. The Plaintiff finally responded with her objection after she filed her own motion to strike against the City.

>**By:** */s/ Stephanie K. Panoff*
>     Stephanie K. Panoff,
>     Division Chief, Labor & Employment
>     Florida Bar No. 69214

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 6th day of May, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Stephanie K. Panoff*
Stephanie K. Panoff
Florida Bar No. 69214

## SERVICE LIST

Michael A. Pizzi, Esq.
6625 Miami Lakes Drive, Suite 316
Miami Lakes Fl 33014
Phone: (786) 594-3948
Fax: (305) 777-3802
Email: mpizzi@pizzilaw.com
Attorney for the **Plaintiff**
Stephan Lopez, Esq.
14875 NW 77th Avenue, Suite 206
Miami Lakes Fl 33014
Phone: (305) 792-8221/Fax: (754) 551-5400
Email: stephan@stephanlopezlawfirm.com
Co-Counsel for **the Plaintiff**

VICTORIA MÉNDEZ, City Attorney
STEPHANIE K. PANOFF,
Division Chief for Labor & Employment
BRYAN E. CAPDEVILA,
Assistant City Attorney
Attorneys for **City of Miami**
444 S.W. 2nd Avenue, Suite 945
Miami, FL  33130-1910
Tel.: (305) 416-1800
Fax: (305) 400-5071

Email:  skpanoff@miamigov.com
Secondary Email:  JMDeloro@miamigov.com